**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
                           :

**MARK B. WEINRAUB,**            :

                :

         **Plaintiff,**       :

                :

   - against -            :

                :

**GLEN RAUCH SECURITIES, INC.,**   :

**BEAR STEARNS & CO., NASD**     :

**DISPUTE RESOLUTION, INC.,**    :

**VALLEY NATIONAL BANK, MARK**   :

**MENDLEY, DAVID C. CARTER, and**  :

**DAVID R. BOLNICK,**           :

                :

        **Defendants.**     :

-----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _12/7/05_

**OPINION AND ORDER**

05 Civ. 4072 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

On October 11, 2005, I dismissed with prejudice an action brought by

plaintiff Mark Weinraub, asserting various federal and state claims against his

former brokers, a bank, and arbitrators associated with the National Association of

Securities Dealers ("NASD").[1] All defendants now ask the Court to impose

sanctions pursuant to the Private Securities Litigation Reform Act of 1995

---

[1]     *See generally Weinraub v. Glen Rauch Secs., Inc.*, — F. Supp. 2d —,
No. 05 Civ. 4072, 2005 WL 2547641 (S.D.N.Y. Oct. 11, 2005) ("October 11
Opinion").

("PSLRA") and Rule 11 of the Federal Rules of Civil Procedure.[2] For the following reasons, I am obliged to impose monetary sanctions on plaintiff's attorney, Alan Paul Weinraub.[3]

## II. BACKGROUND

The facts of this case are discussed at some length in my October 11 Opinion granting defendants' motion to dismiss.[4] Familiarity with that Opinion is assumed, and only the most pertinent facts will be repeated here.

The dispute began when plaintiff sustained a loss of over $500,000 in a margin account he maintained for several years with broker Glen Rauch Securities ("Glen Rauch").[5] In June 2000, plaintiff commenced an arbitration proceeding, conducted by the NASD's dispute resolution subsidiary, against Glen Rauch and its clearing broker Bear Stearns & Company ("Bear Stearns")

---

[2]    *See id.* at *5-6; *see also* Dispute Resolution Defendants' Memorandum of Law in Support of Their Motion Against Plaintiff and Plaintiff's Counsel for Rule 11 Sanctions ("Arbitrators' Rule 11 Mem.") (filed September 27, 2005).

[3]    Alan Weinraub is the plaintiff's brother. For clarity's sake, this Opinion will refer to Mark Weinraub only as "plaintiff."

[4]    *See Weinraub*, 2005 WL 2547641, at *1-2.

[5]    *See id.* at *1.

(collectively, the "Broker Defendants").[6] Plaintiff argued that, by allowing him to maintain a "highly leveraged" and "unreasonably risky" margin position, the Broker Defendants were negligent and had breached their fiduciary duty to him.[7] In 2002, the NASD arbitrators found against plaintiff, and also awarded damages to the Broker Defendants for debt still outstanding in plaintiff's margin account.[8] A proceeding in the New York Supreme Court confirmed the arbitration award and denied plaintiff's cross-motion to vacate the award,[9] and this order was affirmed by the Appellate Division.[10]

Plaintiff then filed suit in this Court, asserting several causes of action against the Broker Defendants and Valley National Bank ("Valley"), as well as

---

[6]    *See id.* at *2. Plaintiff's broker and cousin Michael Weinraub was also named as a respondent in the arbitration. *See id.* The case was heard by defendants Mendley, Carter and Bolnick. *See id.*

[7]    *See id.*; *see also* Statement of Claim Before the National Association of Securities Dealers, Inc. ("Arbitration Claim") ¶¶ 4-5, Ex. 1 to 8/30/05 Declaration of David S. Smith, counsel to Glen Rauch, Bear Stearns and Valley ("8/30/05 Smith Decl.").

[8]    *See Weinraub*, 2005 WL 2547641, at *2.

[9]    *See generally Glen Rauch Secs., Inc. and Weinraub v. Weinraub*, No. 116419-02 (Sup. Ct. N.Y. Co. Feb. 18, 2003) (unpublished opinion) ("Sup. Ct. Op."), Ex. 3 to 8/30/05 Smith Decl.

[10]    *See generally Glen Rauch Secs., Inc. v. Weinraub*, 762 N.Y.S.2d 611 (1st Dept. 2003).

-3-

NASD Dispute Resolution, Inc. and the three individual arbitrators who heard his case (collectively, the "Arbitrator Defendants"). These claims included: securities laws violations, breach of fiduciary duty, violation of section 1983 of Title 42, United States Code ("section 1983"), breach of contract, defamation and conspiracy.[11]

Following the filing of plaintiff's original Complaint on April 22, 2005, both groups of defendants brought motions to dismiss, detailing the Complaint's defects in their briefs. On August 12, 2005, after having had a chance to review defendants' papers, plaintiff filed an amended complaint. The only change from the original Complaint was a new breach of contract claim against the Arbitrator Defendants, accusing them of failing "to provide a fair and adequate Dispute Resolutions forum."[12]

I dismissed this Complaint in its entirety as "woefully deficient on both jurisdictional and substantive grounds."[13] *First*, plaintiff failed to state any valid federal claim. His "violations of securities laws claim," which I necessarily

---

[11]     *Weinraub*, 2005 WL 2547641, at *2.

[12]     *See* Amended Complaint ¶ 89; *see also id.* ¶ 90. The Amended Complaint was in all other respects identical to the original Complaint.

[13]     *Weinraub*, 2005 WL 2547641, at *4.

-4-

construed as a securities fraud claim,[14] was deficient for a plethora of reasons: it was barred by res judicata, it was brought outside the applicable statute of limitations, it failed to comply with the pleading requirements of the PSLRA, it failed to make *any* specific allegation against defendant Bear Stearns, and its allegations of violations of New York Stock Exchange ("NYSE") rules did not give rise to a private right of action.[15] Additionally, despite repeated warnings that the claim was frivolous,[16] plaintiff insisted on suing the Arbitrator Defendants for a violation of section 1983, despite well-settled law establishing that NASD

---

[14]     *See id.* ("[plaintiff's securities law claim] is most characteristic of a securities fraud claim brought under section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.").

[15]     *See id.*

[16]     *See, e.g.,* 5/17/05 Letter from Terri L. Reicher, counsel for Arbitrator Defendants, to Alan Weinraub, counsel for plaintiff, at 2, Ex. A to 9/27/05 Declaration of Terri L. Reicher ("9/27/05 Reicher Decl.") (urging that Arbitrator Defendants be voluntarily dismissed from case because, inter alia, it is well-settled that NASD is not a state actor); 6/24/05 Letter from Reicher to Alan Weinraub, Ex. B to 9/27/05 Reicher Decl. (pursuant to the Court's instructions, providing Weinraub with seven cases holding that NASD is not a state actor for section 1983 purposes); 7/5/05 Letter from Reicher to Alan Weinraub, Ex. C. to 9/27/05 Reicher Decl. (providing an additional Southern District of New York case, decided after the previous letter, foreclosing plaintiff's arguments); 8/15/05 Letter from Reicher to Alan Weinraub, Ex. D. to 9/27/05 Reicher Decl. (again urging voluntary dismissal of Arbitrator Defendants, after filing of Amended Complaint).

arbitrators are not state actors and that an NASD arbitration is not state action.[17]

*Second*, with the dismissal of all federal claims, I found no other basis for federal jurisdiction. This court lacked diversity jurisdiction because plaintiff, a New Jersey resident, sued Valley, a New Jersey corporation. I found no basis for exercising supplemental jurisdiction over the remaining state law claims.[18] *Finally*, in light of my preliminary conclusion that Rule 11 was violated, I ordered plaintiff and his attorney to show cause why sanctions should not be imposed.

## III. LEGAL STANDARD

Upon final adjudication of a securities fraud action, the PSLRA requires the court to make findings regarding each attorney's compliance with Rule 11(b).[19] Rule 11(b) provides in pertinent part:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed

---

[17] *See Weinraub*, 2005 WL 2547641, at *5, *see also id.* at *5 n. 73 (citing three cases provided in advance to plaintiff's counsel by the Arbitrator Defendants: *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002); *Desiderio v. NASD, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999); and *Scher v. NASD, Inc.*, 386 F. Supp. 2d 402, 406-08 (S.D.N.Y. 2005)).

[18] *See id.* at *5. I also noted that, "even if I were to exercise supplemental jurisdiction [over the remaining state law claims], I would dismiss [all of them] pursuant to Rule 12(b)(6)" due to numerous substantive defects. *Id.*

[19] *See* 15 U.S.C. § 78u-4(c)(1).

-6-

> after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . .

In determining whether a Rule 11 violation has occurred, a court applies an objective standard of reasonableness.[20]

To be sure, the Supreme Court has cautioned that Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy."[21] Thus, "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable" courts must "resolve all doubts in favor of the signer of the pleading."[22] Sanctions should only be imposed "'where it is patently clear that a claim has absolutely no chance of success.'"[23] Normally, "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party

---

[20]     *See Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (Rule 11 "'establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'") (quoting Rule 11 Advisory Committee Note).

[21]     *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[22]     *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

[23]     *Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)).

but rather the deterrence of baseless filings and the curbing of abuses."[24]

In a securities fraud case, once the court has determined that Rule 11 has been violated, the PSLRA requires that the court impose "sanctions in accordance with Rule 11."[25] Where the violation of Rule 11 is "substantial," the PSLRA creates a rebuttable presumption that the appropriate sanction is an award to the opposing party of the full amount of its reasonable fees and expenses.[26] Congress enacted this presumption due to concerns that district courts were limiting the amount of the sanction "'to an amount that the court deem[ed] sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the costs imposed on the victim of the violation.'"[27] The PSLRA, therefore, limits the district court's discretion regarding Rule 11 sanctions in the case of a substantial violation.[28]

---

[24]   *Id.* at 266.

[25]   15 U.S.C. § 78u-4(c)(2).

[26]   *See* 15 U.S.C. § 78u-4(c)(3)(A)(i)-(ii).

[27]   *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 220 (2d Cir. 2002) (citation omitted).

[28]   *See Simon DeBartolo*, 186 F.3d at 167 ("The PSLRA thus does not in any way purport to alter the substantive standards for finding a violation of Rule 11, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found.").

Where a complaint combines frivolous with non-frivolous (albeit

non-meritorious) claims, the court must determine whether the non-frivolous

claims "are of a quality sufficient to make the suit as a whole nonabusive and the

Rule 11 violation not substantial."[29] If this is the case, sanctions need not be

imposed under the PSLRA. However, even if the violation is not substantial,

"partial sanctions might still be assessable under ordinary Rule 11 standards to

punish not the bringing of the whole suit, but only of the frivolous claim."[30] And

the presumptive award of full fees and expenses may be rebutted either by

demonstrating "that the award of attorneys' fees and other expenses will impose

an unreasonable burden on that party or attorney and would be unjust" or by

showing that the frivolous claims made up such a small portion of the complaint as

---

[29]   *Gurary*, 303 F.3d at 223. *Gurary* also noted that:

> a securities complaint may . . . present frivolous claims joined
> with nonfrivolous claims in a wide variety of ways, including the
> combination of frivolous claims with (1) valid, winning claims;
> (2) claims lost before a jury but which are meritorious enough to
> survive summary dismissal; (3) claims that, though properly
> dismissed at summary judgment . . . presented novel legal issues
> that could well have gone in the plaintiff's favor; and (4)
> summarily dismissed claims that, while not legally frivolous, lack
> any merit.

*Id.* at 220-21.

[30]   *Id.*

to render the violation de minimus.[31]

## IV. DISCUSSION

### A. The Claims Against the Broker Defendants

Plaintiff sued the Broker Defendants for "violations of federal securities laws," breach of fiduciary duty, "defamation of credit" against Glen Rauch (and Valley), and "conspiracy."[32] For the following reasons, these allegations constitute a "substantial" violation of Rule 11.

#### 1. The Frivolous Securities Fraud Claim Constitutes a Substantial Violation of Rule 11

A federal court must accord the same preclusive effect to a state court decision that a state court would give it.[33] New York has adopted a transactional approach to res judicata: "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred [by

---

[31]    15 U.S.C. § 78u-4(c)(3)(B)(i)-(ii). Neither Congress nor the Second Circuit has explained what the PSLRA means by "de minimus," except that it means something other than "not substantial." *See Gurary*, 303 F.3d at 222 n. 3.

[32]    *See* Amended Complaint ¶¶ 52-69, 70-74, 91-94, 95-97.

[33]    *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (same). In particular, final arbitration judgments, and state court judgments confirming arbitration awards, are entitled to preclusive effect. *See Weinraub*, 2005 WL 2547641, at *3 (citation omitted).

res judicata], even if based upon different theories or if seeking a different remedy.'"[34] Even a cursory comparison between the arbitration record, the state court proceedings, and plaintiff's Amended Complaint reveals that the claims now referred to as "securities law violations" involve plaintiff's Glen Rauch margin account, a transaction that has already been the subject of litigation in other courts of competent jurisdiction on multiple occasions.[35]

No reasonable attorney – especially an attorney who was involved in

---

[34]    *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir. 1996) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)). *Accord Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001) (quotation and citation omitted) ("Under [New York's transactional] analysis, a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought.").

[35]    *Compare* Arbitration Claim ¶ 4 ("Claimant alleges that the investments were not suitable for him, that the Respondents made misrepresentations of material facts to Claimant regarding risk and safety of the investments involved, were negligent in the handling of the [account] of the Claimant in not adhering to Claimant's requests to get out of his margin position, [and] in effect churned the account of Claimant."); *and id.* ¶ 5 ("Respondents herein breached their fiduciary duty to the Claimant by disregarding his investment objectives and needs and allowing expenditures by the Claimant on margin interest."); *with* Amended Complaint ¶ 63 ("Defendants advice to enter into a margin arrangement was not proper, was negligent, and a breach of fiduciary duty); *and id.* ¶¶ 69-74 (alleging, inter alia, that Broker Defendants "neglected to advise" plaintiff of material information pertaining to his account).

-11-

the arbitration proceedings[36] – could fail to realize that any claims arising out of

the margin account, even if repackaged as "securities claims," were *clearly* barred

by res judicata.[37] Nothing in plaintiff's Rule 11 submission attempts to explain

how a reasonable attorney could have pursued this claim.[38] Although my October

11 Opinion noted that plaintiff's securities claim was deficient in several other

respects, counsel's failure to recognize the res judicata bar by itself constitutes a

---

[36] *See* Amended Complaint ¶ 36 (Alan Weinraub first appeared as plaintiff's counsel at the arbitration hearing).

[37] And if Weinraub was not already aware of the problem, the Broker Defendants brought it to his attention via a pre-motion letter and the brief addressed to the original Complaint. *See* Memorandum of Defendants Glen Rauch Securities, Inc., Bear, Stearns & Co. Inc. and Valley National Bank in Support of Rule 11 Sanctions ("Brokers' Rule 11 Mem.") at 8; *see also* 5/31/05 Letter from David Smith, counsel for Broker Defendants and Valley, to Alan Weinraub at 3-4, Ex. B to 11/10/05 Declaration of David S. Smith ("11/10/05 Smith Decl.") (letter to plaintiff's counsel noting the res judicata issue).

[38] Plaintiff argues that res judicata should not apply because the alleged failures of his former attorney caused the preclusion of evidence in the arbitration. *See, e.g.,* Answer Memorandum in Opposition to Motions For Sanctions and to Show Cause Order ("Pl. Rule 11 Opp.") at 17 ("because of the process, because of the arbitrators, because of the NASD, the allegations were never heard"); *see also Weinraub*, 2005 WL 2547641, at *2 (recounting plaintiff's failure to provide discovery during arbitration). However, this argument is itself barred by res judicata, because it was already considered and rejected by the New York Supreme Court. *See* Sup. Ct. Op. at 4 (arbitrators' preclusion order was proper under the circumstances and did not justify vacating arbitration award).

substantial violation of Rule 11.[39]

## 2. Plaintiff's Remaining Claims Against the Broker Defendants

Because plaintiff's securities claim is a substantial violation of Rule

11, I must next consider "whether nonfrivolous claims have been joined and, if so,

whether these claims – whatever their number – are of a quality sufficient to make

the suit as a whole nonabusive and the Rule 11 violation not substantial."[40]  All of

[39]    *See Paganucci v. City of New York*, 993 F.2d 310, 312-13 (2d Cir. 1993) (affirming sanctions award for clear res judicata violation, when sanctioned attorney had participated in earlier proceedings, and when he had been repeatedly warned that res judicata applied); *see also Lipin v. National Union Fire Ins. Co. of Pitt., Pa.*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (awarding sanctions when suit was clearly precluded by res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine); *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001) (awarding sanctions when plaintiffs "were keenly aware of the repetitive nature of their claims," and when "the similarity between plaintiffs' claims here and those presented in [an earlier case in the same district] reflects a continuing intent to evade the rulings of courts in this district"); *Greenberg v. FDIC*, No. 95 Civ. 3853, 1996 WL 270879, at *4 (S.D.N.Y. May 23, 1996) (monetary sanctions warranted when "[a]ny reasonable inquiry into the previous record would show that the issues presented here were barred by res judicata," when plaintiff's counsel was warned in advance of the res judicata problem, and when plaintiff's counsel had no plausible argument for why res judicata should not apply).

[40]    *Gurary*, 303 F.3d at 223. *Accord id.* at 222 (adopting the view that "the district court must examine the qualitative substance of the nonfrivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves.").

-13-

the remaining claims against the Broker Defendants were brought under state law, and were dismissed on various grounds.[41] As I noted in my October 11 Opinion, none of these remaining claims would have survived dismissal even if I had exercised supplemental jurisdiction. Thus, the remaining claims do not render the suit as to the Broker Defendants "non-abusive."[42]

The breach of fiduciary duty claim, as well as any other claim against the Broker Defendants relating to the margin account, are barred by res judicata because all such claims arise from the same transaction as the securities claim, and are therefore equally frivolous for the reasons already stated.[43]

The defamation claim against Glen Rauch and the conspiracy claim

---

[41]    *See Weinraub*, 2005 WL 2547641, at *5.

[42]    I also note that the Broker Defendants put Weinraub and his client on notice of the various jurisdictional and substantive defects of these claims before filing a motion to dismiss the original Complaint. *See generally* 5/31/05 Letter from David S. Smith to Alan Weinraub (detailing, with pertinent caselaw, the defects of the original Complaint, and urging Weinraub to voluntarily dismiss the action).

[43]    Similarly, the claim that the Broker Defendants violated New York Stock Exchange and industry rules, *see* Amended Complaint ¶¶ 63, 65, is frivolous because it could have been raised in the state court proceeding. The New York Supreme Court also rejected plaintiff's contention, repeated in this action, that his rights were violated by the failure to have a signed written agreement with his broker, *see* Sup. Ct. Op. at 6-7 (rejecting this argument); *but see* Amended Complaint ¶¶ 11-16, 58-59 (repeating this argument).

-14-

against all defendants fall into the category of claims that, although not frivolous, "patently lacked merit and only narrowly avoided being frivolous themselves."[44] The defamation claim was dismissed because plaintiff failed to allege that any defendant made a false statement,[45] and the conspiracy claim was dismissed because New York law does not recognize the tort of conspiracy.[46]

The defamation and conspiracy claims are not frivolous largely because they were not completely beyond repair: had I allowed plaintiff a third opportunity to state a valid claim, and if plaintiff could articulate a valid basis for federal jurisdiction, then perhaps plaintiff could have alleged that a defendant made a false statement about him, and could also have pled a conspiracy to

---

[44]     *Gurary*, 303 F.3d at 222.

[45]     Under New York law, the elements of defamation are: "(1) a false statement, (2) publication without privilege or authorization to a third party, (3) by at least a negligence standard of fault and (4) the statement either causes special damages or constitutes defamation per se." *Public Relations Soc'y of Am. v. Road Runner High Speed Online*, 799 N.Y.S.2d 822-23 (Sup. Ct. N.Y. Co. 2005) (citation omitted). Even construing the Complaint generously, there was nothing to suggest any defendant made a false statement regarding plaintiff.

[46]     New York does recognize a derivative cause of action for civil conspiracy based on an underlying tort, *see Weinraub*, 2005 WL 2547641, at *5 n. 82 (citation omitted).

-15-

commit defamation claim.[47]

Finally, none of the claims against other defendants in this action render the suit against the Broker Defendants nonabusive. The Second Circuit has reserved judgment on whether "the presence of a nonfrivolous claim against one defendant might keep frivolous claims against another defendant from being viewed as a substantial violation of the PSLRA."[48] But there is no need to consider this issue here, because the claims against the Arbitrator Defendants and Valley were *themselves* frivolous.[49]

Accordingly, I find that the suit against the Broker Defendants constituted an abusive securities lawsuit, and the PSLRA's presumptive sanction of full attorneys' fees incurred in defending this action must apply.

## B. The Claims Against the Arbitrator Defendants

-----

[47]     *See Gurary*, 303 F.3d at 224 (when leave to amend complaint denied, and when the court found it theoretically possible that dismissed claims could have been repaired if complaint had been amended, sanctions cannot be imposed on basis of those two claims). I did not afford plaintiff an opportunity for another amendment to his complaint because to do so would have been prejudicial to defendants, considering that plaintiff had already amended his complaint after receiving the benefit of full briefing of the first motions to dismiss. *See Weinraub*, 2005 WL 2547641, at *6 n. 93 (citation omitted).

[48]     *Gurary*, 303 F.3d at 224 n. 4.

[49]     *See infra* Part IV.B, IV.C.

-16-

Plaintiff alleged that the arbitration proceeding constituted a violation of his constitutional rights, and that the Arbitrator Defendants breached their contract with plaintiff to provide a fair arbitration forum.[50] Additionally, the Arbitrator Defendants appear to be included in the conspiracy claim.[51] As these claims do not implicate the PSLRA, I will conduct a standard Rule 11 analysis. For the following reasons, I find that the claims against the Arbitrator Defendants were completely frivolous.

## 1. The Section 1983 Claim

The Arbitrator Defendants repeatedly warned Weinraub that he could not bring a section 1983 claim against them.[52] In addition, at a conference on June 23, 2005, I warned Weinraub that filing an opposition to the Arbitrator Defendants' motion to dismiss "would be to risk court-initiated sanctions under Rule 11."[53] I directed the Arbitrator Defendants to provide plaintiff with case law

---

[50]    *See* Amended Complaint ¶¶ 7-10, 75-88, 89-90.

[51]    *See id.* ¶ 96 ("all" defendants conspired to "do any and all illegal acts herein in order to deprive the plaintiff of his property").

[52]    *See supra* note 16.

[53]    Arbitrators' Rule 11 Mem. at 4. *Accord* Brokers' Rule 11 Mem. at 5; *see also* Pl. Rule 11 Opp. at 16-17 ("[w]hen I appeared before the Court . . . your Honor asked me to explain . . . where is the state action."). There is no transcript of this conference, but I accept the undisputed representations as to what I said.

-17-

demonstrating that his section 1983 claim against them would fail.[54] Instead of

heeding these warnings, Weinraub amended the complaint without deleting the

section 1983 claim. Not surprisingly, I dismissed the section 1983 claim for lack

of state action.[55] In light of Weinraub's disregard of controlling law, failure to

offer a colorable argument for the modification of that law, and failure to heed

---

[54]     *See, e.g.,* Arbitrators' Rule 11 Mem. at 2. The Arbitrator Defendants
complied the next day. *See* 6/24/05 Letter from Terri Reicher to Alan Weinraub.

[55]     *See Weinraub,* 2005 WL 2547641, at \*4-5. Weinraub has argued that
there is a sufficiently close nexus between NASD arbitration and a state actor to
render such arbitration state action. *See* Plaintiff's Memorandum of Law in
Opposition to Defendants NASD, Carter, Mendley and Bolnick Motion to Dismiss
Amended Complaint ("Pl. Arbitrators' Dismissal Opp.") at 1-2, 4 (NASD
arbitrators "functionally comparable" to government action); Pl. Rule 11 Opp. at
6-7, 17 (asserting that "NASD can't have it both ways; when it's convenient to be
whatever it decides to be [private entity, or quasi-judicial entity entitled to arbitral
immunity], it merely turns like a chameleon."). However, I find that such an
argument for the modification of existing law could not reasonably be asserted in
this case. No colorable nexus existed between the arbitration, a private dispute
between private parties, and any state action. The cases cited to Weinraub prior to
his filing of the Amended Complaint completely foreclosed such an argument.

Another judge of this Court recently rejected a plaintiff's argument
that an NASD investigation constituted state action, when plaintiff's statements
made in that investigation led to a criminal prosecution for perjury. *See Scher,*
386 F. Supp. 2d at 406-08. Specifically, Chief Judge Michael Mukasey rejected
essentially the same argument Weinraub made in this litigation: "contrary to
plaintiff's contention, it is by no means 'inconsistent' to find that, on the one hand,
the NASD exercises insufficient state action to trigger constitutional protections in
a case such as this, while nevertheless holding that the NASD is entitled to
absolute immunity in the exercise of its quasi-public regulatory duties." *Id.* at 408.

-18-

warnings by the Court and his opponents, I have no choice but to impose Rule 11 sanctions.

The breach of contract claim was also frivolous because any reasonable attorney would have recognized that such a claim was barred by arbitral immunity.[56] As with the section 1983 claim, it was made abundantly clear to plaintiff and his attorney that the well-settled law in this area compelled dismissal of the breach of contract claim.[57] Nothing in any of plaintiff's papers regarding the arbitral immunity issue can be construed as a nonfrivolous argument for the modification or reversal of existing law.[58]

Moreover, because both of plaintiff's federal claims – the securities claim and the section 1983 claim – were frivolous, and because there was no basis for diversity jurisdiction,[59] the Arbitrator Defendants should never have been

---

[56]    *See Weinraub*, 2005 WL 2547641, at \*5 (citations omitted)

[57]    *See* 8/15/05 Letter from Reicher to Alan Weinraub at 2 (providing plaintiff with several cases establishing that arbitral immunity precludes the breach of contract claim added by the Amended Complaint).

[58]    Plaintiff erroneously asserts that arbitral immunity is only granted to brokers, and that it would be "an unfortunate situation" if arbitrators enjoyed immunity. Pl. Arbitrators' Dismissal Opp. at 2, 4.

[59]    *See* Amended Complaint ¶¶ 45-46 (stating, or at least clearly implying, that Valley was a non-diverse defendant, but not affirmatively stating Valley's corporate citizenship); *see also generally* Plaintiff's Memorandum of

named in this lawsuit, regardless of the merits of the breach of contract claim.[60] Accordingly, Rule 11 sanctions for the entire lawsuit against the Arbitrator Defendants are warranted.

## C. The Claims Against Valley National Bank

Valley was involved in collecting the arbitration judgement obtained by the Broker Defendants.[61] Plaintiff alleged "defamation of credit," and "conspiracy" against certain defendants, including Valley.[62] I have found these claims to be nonfrivolous, albeit barely so.[63] However, as publicly-available documents clearly state, Valley is a resident of New Jersey.[64] The Amended

---

Law in Opposition to Defendants Glen Rauch Securities, Inc., Bear, Stearns & Co., and Valley National Bank Motion to Dismiss Amended Complaint ("Pl. Brokers' Dismissal Opp.") (not responding to Broker Defendants' assertion that the Court lacked diversity jurisdiction); *see also infra* notes 64-67 and accompanying text.

[60] *Cf. Inter-County Resources*, 49 F. Supp. 2d at 685 (sanctions not warranted for dismissed state law claims, when such claims were "not so patently defective that [defendants] would not have been forced to properly defend against those claims in this Court," and when plaintiff made a colorable, though unsuccessful, argument for existence of diversity jurisdiction).

[61] *See* Amended Complaint ¶¶ 94, 97.

[62] *See id.* ¶¶ 91-97.

[63] *See supra* Part IV.A.2.

[64] *See* Articles of Association of Valley National Bank at 1, Ex. 1 to 6/16/05 Affidavit of Alan D. Eskow, Executive Vice President of Valley National

-20-

Complaint pled the corporate citizenship of the other defendants, but studiously

avoids mentioning that Valley is a New Jersey banking association.[65] Moreover,

because both of the federal claims were frivolous, Weinraub could have no

reasonable expectation that a court would exercise supplemental jurisdiction over

the state law claims.[66] Accordingly, naming Valley as a defendant is itself

---

Bank.

[65]     *See* Amended Complaint ¶¶ 45-46 (twice stating that all defendants
are diverse "except for Valley," but not stating Valley's New Jersey citizenship).
"[A] complaint will be deemed insufficient to establish federal court jurisdiction
if, on its face, it fails affirmatively to allege the principal place of business of the
corporate parties." *Route Messenger Serv., Inc. v. Holt-Dow, Inc.*, 139 F.R.D. 311,
312 (S.D.N.Y. 1991) (sanctioning plaintiff's attorney, when court found that his
"failure to include in the complaint a statement regarding [a defendant's] principal
place of business appears intentional, to fabricate complete diversity of citizenship
between the parties, and thus, federal court jurisdiction.").

[66]     *See, e.g., Adams v. Intralinks, Inc.*, No. 03 Civ. 5384, 2004 WL
1627313, at *8 (S.D.N.Y. July 20, 2004) (quotation and citation omitted) ("in the
usual case in which all federal law claims are eliminated before trial, the balance
of factors to be considered under the [supplemental] jurisdiction doctrine —
judicial economy, convenience, fairness, and comity — will point toward
declining to exercise jurisdiction over the remaining state law claims."); *cf.
Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (quotation and
citation omitted) ("[s]imply raising a federal issue in a complaint will not
automatically confer federal question jurisdiction. Rather, we ask "whether the
cause of action alleged is so patently without merit as to justify the court's
dismissal for want of jurisdiction.").

-21-

sanctionable.[67]

### D. Measure of Sanctions

#### 1. Sanctions Are to be Imposed Only Against Alan Weinraub

The numerous violations of Rule 11 detailed above represent failures

to advance "claims, defenses, and other legal contentions . . . warranted by

existing law or by a nonfrivolous argument for the extension, modification, or

reversal of existing law or the establishment of new law."[68] Both groups of

defendants assert that sanctions are properly assessed only against Alan Weinraub,

as opposed to plaintiff.[69] I agree. Under Rule 11(c)(2)(A), monetary sanctions

should be leveled against plaintiff's counsel alone for failure to comply with Rule

---

[67] *See, e.g., Solloway v. Ellenbogen*, 121 F.R.D. 29, 31 (S.D.N.Y. 1988) (when face of complaint disclosed lack of diversity jurisdiction, court imposed sanctions against plaintiff's counsel, in the amount of defendant's reasonable attorneys' fees in defending the action, as "no reasonable person could have believed that diversity jurisdiction existed over this action.").

[68] Fed. R. Civ. P. 11(b)(2).

[69] *See* Dispute Resolution Defendants' Response Memorandum of Law in Support of Rule 11 Sanctions Against Plaintiff's Counsel ("Arbitrators' Rule 11 Reply") at 1 n. 1; *see also* Brokers' Rule 11 Mem. at 4.

$11(b)(2).^{70}$ Therefore, all sanctions are directed against Alan Weinraub.[71]

## 2. Nature of Sanctions

### a. Broker Defendants/Valley

Glen Rauch, Bear Stearns and Valley were represented by Smith

Campbell, LLP.[72] Smith Campbell has submitted billing records and time entries,

covering the period from May-October 2005, revealing a total of $32,943.88 in

---

[70] *See* Fed. R. Civ. P. 11(c)(2)(A); *see also Salovaara v. Eckert*, 222 F.3d 19, 34 n. 11 (2d Cir. 2000) (district court erred in granting sanctions against the plaintiff himself when he was represented by counsel).

[71] Sanctions against Alan Weinraub are particularly appropriate in this instance. Plaintiff, understandably upset by his substantial financial loss, is intent on holding someone responsible for this loss. However, as plaintiff's brother as well as a licensed attorney, Weinraub was in a unique position to persuade his client that this action had no merit.

The PSLRA by its terms requires a court to make findings regarding *each* attorney's compliance with Rule 11(b). *See* 15 U.S.C. § 78u-4(c)(1). I find that all attorneys appearing in this action, aside from Alan Weinraub, complied with Rule 11(b).

[72] *See* 11/10/05 Smith Decl. ¶ 2. Additionally, Glen Rauch Securities, a wholly-owned subsidiary of Valley, is obligated to pay all of Smith Campbell's legal fees for this action. Therefore, any award to Bear Stearns or Valley should be made to Glen Rauch. *See* 11/4/05 Declaration of Glen R. Rauch ¶¶ 2-3. Because Valley's inclusion in this lawsuit is sanctionable, I made no attempt to separate the portion of Smith Campbell's legal work performed on behalf of Valley, as opposed to the Broker Defendants.

attorneys' fees and expenses in connection with this matter.[73] This figure

represents a total of 114.5 hours of legal work by one partner and one associate, as

well as $558.88 in expenses.[74]

Having carefully reviewed Smith Campbell's billing statements, I

find that these fees and expenses were warranted, especially considering the

efforts by Smith Campbell at an early stage of this litigation to convince plaintiff

to withdraw his allegations.[75] Furthermore, the rates charged by Smith Campbell

are comparable to those typically charged by attorneys at law firms in the Southern

District of New York.[76]

### b.   Arbitrator Defendants

Although Rule 11 does not require an award of full attorneys' fees

incurred in defending the action, I find this to be the proper sanction, considering

the extent of the Rule 11 violation. Any lesser sanction would not advance the

---

[73]    *See generally* Ex. A to 11/10/05 Smith Decl.  Smith Campbell advises
the Court that "to simplify and expedite the resolution of this case," it is not
seeking an award for its work in November, including work on its Rule 11
submissions. *See id.* ¶ 7.

[74]    *See id.* ¶¶ 3, 5.

[75]    *See id.* ¶ 8 and Ex. B.

[76]    Partner David Smith claimed a billing rate of $350 per hour, while
associate Alice Jump claimed a rate of $250 per hour. *See id.* ¶ 5.

goals of Rule 11, especially in light of the efforts by the Arbitrator Defendants and the Court to dissuade counsel from pursuing these claims.[77]

The Arbitrator Defendants were represented throughout this litigation by attorneys from the NASD's general counsel's office.[78] These attorneys do not bill by the hour.[79] Nevertheless, the NASD has estimated that this litigation cost it $7,200.65 in attorney time and expenses.[80] This figure derives from the following elements: 1) a "conservative estimate" of 42.5 hours that two of its attorneys devoted to this litigation; 2) an estimated hourly rate of $156.25, derived from the average NASD attorney salary, and the value of each attorney's benefits; and $560.02 in expenses, chiefly consisting of the airfare for two attorneys to fly from Washington D.C. to New York for a conference on June 23.[81]

---

[77]     At the same time, I decline to award $1,916.35, in attorneys' fees and expenses associated with the Arbitrator Defendants' Rule 11 motion. The Rule allows, but does not require, the district court to award a prevailing party "the reasonable expenses and attorneys' fees incurred in presenting or opposing the [Rule 11] motion." Fed. R. Civ. P. 11(c)(1)(A).

[78]     See 11/10/05 Declaration of Terri L. Reicher ("11/10/05 Reicher Decl.") ¶ 1.

[79]     See Arbitrators' Rule 11 Reply at 9.

[80]     See id. at 10. The NASD claimed $9,117 in fees and expenses, but I have deducted the costs attributable to its Rule 11 motion.

[81]     See id.; see also Exs. A-B to 11/10/05 Reicher Decl. (providing documentation for claimed expenses).

-25-

Having carefully reviewed the NASD's figures, I find that an award

of $7,200.65 is warranted. In particular, the hourly rate claimed by the NASD

attorneys is much lower than what would have been charged by New York

counsel.

### c. Unreasonable Burden

The record is incomplete in one respect – the Court has no

information regarding the burden that would be incurred by Alan Weinraub if

required to pay the full award of $40,144.53. As noted above, the PSLRA allows

a court to reduce a sanctions award if the sanctioned party can show an

"unreasonable burden" from an award of full attorneys' fees.[82] Similarly, under

ordinary Rule 11 standards, "[a]s a final matter of the sanctions determination,

courts must take into account the financial circumstances of the sanctioned

---

[82]    15 U.S.C. § 78u-4(c)(3)(B)(i)-(ii); *see also Gurary*, 303 F.3d at 221-22 (the PSLRA requires the sanctioned party to offer, "through financial statements or other proof, evidence that the [presumptive] award is unreasonable and unjust, given the party's economic or like status[,]" and a "district court is required to compare the burden on the sanctioned party to the burden based on the victim of the litigation, given the victim's financial or similar status."); *Adams v. Intralinks, Inc.*, No. 03 Civ. 5384, 2005 WL 1863829, at *5 (Aug. 5, 2005) (quotation and citation omitted) ("[c]onclusory [assertions of hardship], without a backing of 'hard data,' do not suffice to show that the imposition of sanctions in the amount necessary to compensate defendants would be unjust").

party."[83]

Accordingly, I will afford Alan Weinraub the opportunity to
demonstrate that the sanctions set forth above will be an unreasonable burden.
Specifically, he can submit to the Court, within thirty days of this Opinion and
Order, an affidavit supported by personal financial records (including tax returns),
financial records of his legal practice, and any other relevant evidence, to
demonstrate that he cannot pay the full amount of the sanctions awarded in this
Opinion.[84] This submission may *not* reiterate Weinraub's arguments in relation to
the motion to dismiss, or the issue of whether Rule 11 sanctions are warranted. If
defendants wish to respond to Weinraub's submission, they must do so in letter
form within seven days of receipt of such submission.

## V. CONCLUSION

For the foregoing reasons, monetary sanctions against plaintiff's
attorney, Alan Weinraub, are provisionally awarded in the following amounts:

---

[83] *Association of Holocaust Victims for Restitution of Artwork and
Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 Civ. 3600, 2005 WL
3099592, at *8 (S.D.N.Y. Nov. 17, 2005) (citing *Sassower v. Field*, 973 F.2d 75,
81 (2d Cir. 1992)).

[84] I also note that Weinraub has not had the opportunity to object to
items in the statements of fees and expenses submitted by defendants. If he wishes
to lodge any such objections, he must do so as part of his submission regarding his
finances.

$32,943.88 to defendant Glen Rauch Securities, Inc., and $7,200.65 to defendant

National Association of Securities Dealers Dispute Resolution Inc. Weinraub may

submit documentation regarding his finances, and objections to defendants'

statements of fees and expenses, as set forth above.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J

Dated:     New York, New York
            December 9, 2005

- **Appearances -**

**For Plaintiff:**

Alan Paul Weinraub, Esq.
137A Lake Street
Rouses Point, NY 12979
(518) 297-3900

**For Defendants Glen Rauch Securities, Bear, Stearns & Co., and Valley National Bank:**

David S. Smith, Esq.
Smith Campbell, LLP
110 Wall Street
New York, NY 10005
(212) 344-1500

**For Defendants NASD Dispute Resolution, Inc., Mark Mendley, David C. Carter and David R. Bolnick:**

Terri L. Reicher
Associate General Counsel
National Association of Securities Dealers, Inc.
1735 K Street, N.W.
Washington, DC 20006
(202) 728-8967